IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| AMY DEGIOANNI, *individually and on behalf of all those similarly situated*, | ) ) ) |
| *Plaintiff*, | ) No. _____ ) |
| v. | ) **CLASS ACTION COMPLAINT** ) |
| TOPCO ASSOCIATES, LLC, *a Delaware limited liability company*, | ) JURY TRIAL DEMANDED ) ) |
| *Defendant*. | ) ) ) |

Amy Degioanni ("Plaintiff"), individually and on behalf of all other consumers similarly situated, by and through her undersigned counsel, hereby brings this action against Topco Associates, LLC ("Defendant") alleging that its Food Club fruit and grain cereal bars (raspberry, blueberry, mixed berry, apple cinnamon, and strawberry flavors) ("the Products"), which are manufactured, packaged, labeled, advertised, distributed, and sold by Defendant, are misbranded and falsely advertised, and upon information and belief and investigation of counsel alleges as follows:

**PARTIES**

1. Plaintiff Amy Degioanni is and at all times relevant was a citizen of the state of Texas, domiciled in Magnolia, Texas.

2. Defendant Topco Associates, LLC is a Delaware limited liability company with its principal place of business in Illinois. All members and managers of the limited liability company are citizens and residents of the state of Illinois.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code); specifically, under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

4. Plaintiff seeks to represent Class members who are citizens of states or countries different from the Defendant.

5. The matter in controversy in this case exceeds $5,000,000 in the aggregate, exclusive of interests and costs.

6. In addition, "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

7. In the alternative, the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000 exclusive of interest and costs.

8. This Court has personal jurisdiction over Defendant because this action arises out of and relates to Defendant's contacts with this forum.

9. Those contacts include but are not limited to sales of the Products directly to commercial and individual consumers located in this district, including at least one Plaintiff; shipping the Products to commercial and individual consumers in this district, including at least one Plaintiff; knowingly directing advertising and marketing materials concerning the Products into this district through wires and mails, both directly and through electronic and print publications that are directed to commercial and individual consumers in this district; and

operating an e-commerce web site that offers the Products for sale to commercial and individual consumers in this district, as well as offering the Products for sale through third-party e-commerce websites, through both of which commercial and individual consumers including Plaintiff have purchased the Products.

10. Defendant knowingly directs electronic activity and ships the Products into this district with the intent to engage in business interactions for profit, and it has in fact engaged in such interactions, including the sale of the Products to Plaintiff.

11. Defendant also sells the Products to retailers and wholesalers in this district for the purpose of making the Products available for purchase by individual consumers in this district.

12. Plaintiff's losses and those of other Class members were sustained in this district.

13. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district.

14. Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because this Court maintains personal jurisdiction over Defendant.

## FACTUAL ALLEGATIONS

**A.     Consumers Pay A Premium for "Clean Labels."**

15. Across the globe, consumers are increasingly attuned to claims that foods are "all-natural," minimally processed, or otherwise free of artificial flavors and preservatives.

16. For example, a 2018 survey by L.E.K. Consulting found that overwhelming numbers of consumers were committed or casual adherents to so-called "clean label" food attributes: "No artificial ingredients" (69 percent); "No preservatives" (67 percent); or "All-natural" (66 percent). These were the three most attractive attributes in the consumer survey. Roughly 60 to 70 percent of consumers reported a willingness to pay a price premium for "clean label" foods. *See* https://www.lek.com/insights/ei/next-generation-mindful-food-consumption.

17. This consumer preference has led to an explosion in the category of "clean label" foods and beverages. Leading analyst Allied Market Research estimated that the "natural foods and drinks" category would grow by an estimated compound annual growth rate of 13.7 percent from 2016 to 2023, reaching $191 billion in annual sales by 2023. *See* https://www.alliedmarketresearch.com/natural-food-and-drinks-market.

18. Mrs. Degioanni purchased the Products (strawberry, raspberry, and apple cinnamon flavors) on or about August 16, 2023 from a Brookshire Brothers grocery store in Magnolia, Texas. Ms. Degioanni is a teacher and mother of four who attempts to consume only natural flavors in the foods she purchases for her family.

**B.    Defendant's Use of Synthetic Malic Acid.**

19. Defendant formulates, manufactures, and sells fruit-flavored cereal bars under the trade name Food Club.

20. The Products' labels state they are "Naturally Flavored" or contain "Natural Flavors with Other Natural Flavors" and are "Made With Real Fruit" as these examples show:





21. These statements are false and/or misleading. All of the Products contain an ingredient known as "malic acid."

22. The word "malic" in malic acid derives from the Latin *malum*, for apple. Malic acid derived from natural fruit sources (usually apples) is commonly known as "L malic acid" instead of its scientific name, 2-Hydroxybutanedioic acid. L malic acid is quite expensive and is generally cost-prohibitive to use in mass-produced foods and beverages,

23. There is a synthetic or artificial version of malic acid derived from a petroleum substrate and other synthetic components. It is commonly referred to as DL malic acid, instead of its scientific name of d-hydroxybutanedioic acid. DL malic acid is manufactured in petrochemical plants from benzene or butane—components of gasoline and lighter fluid, respectively—through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts.

24. Federal regulations note explicitly that "DL-malic acid does not occur naturally." 21 C.F.R. § 184.1069(a).

25. When testing malic acid to determine whether it is artificial (DL) or natural (L) malic acid, the industry standard is to test for the presence of the "D isomer" of malic acid. This isomer is not present in any amount in L malic acid. Therefore, the presence of the D isomer of malic acid in any amount in a food or beverage indicates the use of artificial DL malic acid instead of natural L malic acid.

26. Counsel for Plaintiff commissioned testing of the specific items that were purchased by Plaintiff. That testing was conducted on or about September 15, 2023 by Krueger Food Laboratories, Inc. of Chelmsford, Massachusetts, a reputable independent food testing and analysis laboratory that has conducted testing for the food and beverage industry since 1984.

27. This testing by Krueger Food Laboratories revealed that the D isomer was present in every Product purchased by Plaintiff. As a result, this testing establishes that the malic acid used in these Products is artificial DL malic acid, and not natural L malic acid.

**C.    Malic Acid Is Used In the Products As A Flavor.**

28. Fruit flavors in a food are imparted by the interactions between sugars, acids, lipids, and various volatile compounds. The sweetness, tartness, and overall profile of a fruit flavor in a food is determined by the ratio between the sugars (mainly glucose and fructose) and acids, such as citric and malic acid. Fruits such as blueberries and strawberries have their own natural ratio of sugars and acids.

29. That is, as a matter of food chemistry, there is no such flavor as "strawberry" or the like. Rather, there is a ratio between acids and sugars that is consistent with what the human tongue senses and understands as the flavor "strawberry," and that is naturally found in strawberries.

30.     By adjusting the ratio between sugars and acids through the use of malic acid in foods and beverages, a manufacturer is enabled to create or simulate from scratch a "flavor" such as strawberry, through replication of the sugar/acid ratio present in strawberries in nature.

31.     In addition, by adding malic acid to a food or beverage, the manufacturer is enabled to reinforce the characterizing fruit flavor of the food product. That is, food manufacturers are enabled to adjust the sweetness or tartness of a fruit flavor such as strawberry, adjusting the flavor notes to increase the food product's commercial acceptability.

32.     Federal regulations promulgated pursuant to the Food, Drug, and Cosmetic Act ("FDCA") require that a food's label accurately describe the nature of the food product and its characterizing flavors. 21 C.F.R. § 102.5(a).

33.     Artificial flavor is defined as "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R § 101.22(a)(1).

34.     Natural flavor is defined as "essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents" from fruits or vegetables, "whose significant function in food is flavoring rather than nutritional." 21 C.F.R § 101.22(a)(3).

35.     Any recognizable primary flavor identified directly or indirectly on the front label of a food product, whether by word, vignette, depiction of a fruit, or other means is referred to as a "characterizing flavor." 21 C.F.R. § 101.22.

36.     If a food product's characterizing flavor is not created ***exclusively*** by the named flavor ingredient, the product's front label must state that the product's flavor was simulated or

reinforced with either natural or artificial flavorings or both. Specifically, if any component is present used that "simulates, resembles or reinforces" the characterizing flavor, the front label must prominently inform consumers that the product is "Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

37. That is, even if a food or beverage is flavored with strawberries, its label must state that it is "Artificially Flavored" if an artificial substance is used to reinforce or adjust the flavor profile of the food product.

38. A food product's label also must include a statement of the "presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance . . . and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food." 21 C.F.R. § 102.5.

39. Such statement must be in boldface print on the front display panel and of sufficient size for an average consumer to notice.

40. That is, whenever a food manufacturer uses malic acid to simulate or reinforce the characterizing flavor of a food or beverage, it is required under federal regulations to state that the food or beverage is "Artificially Flavored" if the malic acid used to simulate or reinforce the characterizing flavor is DL malic acid.

41. By changing the ratio between sugars and acids that is naturally found in fruits, the DL malic acid used in the Products by Defendant reinforces, simulates, or creates the characterizing flavors, regardless of any other effect it may have or purpose for which it was included.

42. DL malic acid is not a "natural flavor" as this term is defined by federal and state regulations because it is not derived from a fruit or vegetable or any other natural source, but rather from a petroleum substrate. The Products therefore contain artificial flavorings.

43. Further, the presence of artificial malic acid in the Products has a material bearing on price or consumer acceptance of the Products, and consumers may be and have been misled about the presence or absence of the artificial DL malic acid that is a component in the Product.

44. Because the Products contain artificial flavoring, federal regulations and corresponding state law incorporating and enacting those regulations require the Products to display both front- and back-label disclosures to inform consumers that the Products are artificially flavored.

45. The Products have none of the required disclosures regarding the use of artificial flavors.

46. Plaintiffs reserve the right to amend this Complaint to add further products that contain similar label misrepresentations as testing continues.

**D.    Plaintiff Reasonably Relied on Defendant's Labelling Statements.**

49. Labels are the chief means by which food product manufacturers convey critical information to consumers, and consumers have been conditioned to rely on the accuracy of the claims made on these labels.

50. Further, federal law and corresponding state law and regulations both reflect and create reasonable consumer expectations concerning the contents of foods and beverages. That is, consumers have been conditioned to expect that a food product that states that it is "Naturally Flavored" or contains "Natural Flavors With Other Natural Flavors" does not have its flavor created, simulated, or reinforced by flavoring agents derived from petroleum substrates.

51. Plaintiff reviewed the labels on the Products prior to her purchase, and reviewed the flavoring claims being made on those labels. Consumers such as Plaintiff who viewed the Products' labels reasonably understood Defendant's "Naturally Flavored" and "Natural Flavors With Other Natural Flavors" statements, as well as its failure to disclose the use of artificially derived malic acid, to mean that the Products contain only natural flavorings. These representations were false.

52. Consumers including Plaintiff reasonably relied on these label statements such that they would not have purchased the Products from Defendant if the truth about the Products was known, or would have only been willing to pay a substantially reduced price for the Products had they known that Defendant's representations were false and misleading.

53. In the alternative, because of its deceptive and false labelling statements, Defendant was enabled to charge a premium for the Products relative to key competitors' products, or relative to the average price charged in the marketplace.

54. Consumers including Plaintiffs especially rely on label claims made by food product manufacturers such as Defendant, as they cannot confirm or disprove those claims simply by viewing or even consuming the Products.

55. Plaintiff suffered economic injury by Defendant's fraudulent and deceptive conduct as stated herein, and there is a causal nexus between Defendant's deceptive conduct and Plaintiff's injury.

## CLASS ACTION ALLEGATIONS

56. Plaintiff brings this action individually and as representative of all those similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of all consumers in in the state of Texas who purchased the Products on or after August 16, 2019.

57. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

58. Plaintiff reserves the right to alter the Class definition, and to amend this Complaint to add Subclasses, as necessary to the full extent permitted by applicable law.

59. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

60. **Numerosity – Rule 23(a)(1)**: The size of the Class is so large that joinder of all Class members is impracticable. Plaintiff believes and avers there are thousands of Class members geographically dispersed throughout the state of Texas.

61. **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3)**: There are questions of law and fact common to the Class. These questions predominate over any questions that affect only individual Class members. Common legal and factual questions and issues include but are not limited to:

   a. Whether the marketing, advertising, packaging, labeling, and other promotional materials for Defendant's Products is misleading and deceptive;

   b. Whether a reasonable consumer would understand Defendant's label statements, as described herein, to indicate that the Products contained only natural flavorings, and reasonably relied upon those representations;

   c. Whether Defendant was unjustly enriched at the expense of the Plaintiffs and Class members;

  d. the proper amount of damages and disgorgement or restitution;

  e. the proper scope of injunctive relief; and

  f. the proper amount of attorneys' fees.

62. Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate this action. The common questions will yield common answers that will substantially advance the resolution of the case.

63. In short, these common questions of fact and law predominate over questions that affect only individual Class members.

64. **Typicality – Rule 23(a)(3)**: Plaintiff's claims are typical of the claims of the Class members because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

65. Specifically, all Class members, including Plaintiff, were harmed in the same way due to Defendant's uniform misconduct described herein; all Class members suffered similar economic injury due to Defendant's misrepresentations; and Plaintiff seeks the same relief as the Class members.

66. There are no defenses available to Defendant that are unique to the named Plaintiff.

67. **Adequacy of Representation – Rule 23(a)(4)**: Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with the Class members' interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant.

68. Furthermore, Plaintiff has selected competent counsel who are experienced in class action and other complex litigation. Plaintiff and Plaintiff's counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

69. **Superiority – Rule 23(b)(3)**: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the following reasons:

   a. the damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct such that it would be virtually impossible for the Class members individually to redress the wrongs done to them. In fact, they would have little incentive to do so given the amount of damage each member has suffered when weighed against the costs and burdens of litigation;

   b. the class procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and supervision by a single Court;

   c. the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant; and

   d. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would be dispositive of the interests of other Class members or would substantively impair or impede their ability to protect their interests.

70. Unless the Class is certified, Defendant will retain monies received as a result of its unlawful and deceptive conduct alleged herein.

71. Unless a class-wide injunction is issued, Defendant will likely continue to advertise, market, promote, and sell its Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Class will continue to be misled, harmed, and denied their rights under the law. Plaintiffs will be unable to rely on the Products' advertising or labeling in the future, and so will not purchase the Products although she would like to.

72. Furthermore, Plaintiff has not merely alleged an "informational" injury, but has also alleged that Defendant has been enabled to charge a price premium for the Products. Plaintiff has therefore alleged that compliance with federal and state regulations regarding the presence of artificial flavors in the Products would cause a decrease in the price of the Products at which Plaintiff and members of the Class would be willing to buy the Products. As a result, Plaintiff has alleged more than simply an interest in Defendant telling the truth on its labels, but an economic injury that further supports prospective injunctive relief.

73. **Ascertainability**. To the extent ascertainability is required, the Class members are readily ascertainable from Defendant's records and/or its agents' records of retail and online sales, as well as through public notice.

74. Defendant has acted on grounds applicable to the Class as a whole, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

## COUNT 1
## VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT
## TEX. BUS. & COM. CODE § 17.01 *et seq.*

75. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

76. Plaintiff has satisfied all prerequisites to suit.

77. Plaintiff is a consumer, as defined under the Texas Deceptive Trade Practices Act ("TDTPA"), and relied upon the false, misleading, or deceptive acts or practices by Defendant, as set forth above, to her detriment.

78. Defendant's conduct violates the TDTPA by, *inter alia*, representing that goods have characteristics, ingredients, or benefits that they do not have; representing that goods are of a particular standard, quality, or grade, when they are of another; and advertising goods with intent not to sell them as advertised.

79. All of the above-described acts, omissions, and failures of Defendant are an actual and proximate cause of Plaintiff's damages.

80. Because Defendant's actions and conduct as set forth herein were committed knowingly and intentionally, Plaintiff is entitled to recover, in addition to all damages described herein, mental anguish damages and additional penalty damages, in an amount not to exceed three times such actual damages, for Defendant having knowingly committed its conduct. Additionally, Plaintiff is ultimately entitled to recover damages in an amount not to exceed three times the amount of mental anguish and actual damages due to Defendant having intentionally committed such conduct.

81. As a result of Defendant's unconscionable, misleading, and deceptive actions and conduct as set forth herein, Plaintiff has been forced to retain the legal services of the undersigned attorney to protect and pursue these claims on his behalf. Accordingly, Plaintiff also seeks to recover her costs and reasonable and necessary attorneys' fees as permitted under Section 17.50(d) of the Texas Business & Commerce Code, as well as any other such damages to which Plaintiff may show herself to be justly entitled at law and in equity.

## COUNT 2
## UNJUST ENRICHMENT UNDER TEXAS LAW

82. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

83. Defendant, through its marketing and labeling of the Products, misrepresented and deceived consumers regarding the flavoring in the Products.

84. Defendant did so for the purpose of enriching itself and it in fact enriched itself by doing so.

85. Consumers conferred a benefit on Defendant by purchasing the Products, including an effective premium above their true value. Defendant appreciated, accepted, and retained the benefit to the detriment of consumers.

86. Defendant continues to possess monies paid by consumers to which Defendant is not entitled.

87. Under the circumstances it would be inequitable for Defendant to retain the benefit conferred upon it and Defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience.

88. Plaintiff seeks disgorgement of Defendant's ill-gotten gains and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

89. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

## COUNT 3
## BREACH OF EXPRESS OR IMPLIED WARRANTY
### TEX. BUS. & COM. CODE §§ 17.46, 17.50

90. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

91. Plaintiff has satisfied all prerequisites to suit.

92. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Products were "Naturally Flavored" or contained only "Natural Flavors With Other Natural Flavors."

93. Defendant's express warranties, and its affirmations of fact and promises made to Plaintiff and the Class and regarding the Products, became part of the basis of the bargain between Defendant and Plaintiff and the Class, which creates an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

94. The Products do not conform to the express warranty as set forth herein.

95. As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products' unnatural ingredients; (b) they paid a price premium based on Defendant's express warranties; and (c) the Products do not have the characteristics, uses, or benefits that were promised.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief against Defendant:

a. Certifying the Class;

b. Declaring that Defendant violated the TDTPA and/or was unjustly enriched and/or violated an express or implied warranty;

c. Awarding actual and other damages as permitted by law, and/or ordering an accounting by Defendant for any and all profits derived by Defendant from the conduct alleged herein;

d. Ordering an awarding of injunctive relief, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

e. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff;

f. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g. Such other relief as the Court may deem just and proper.

TRIAL BY JURY IS DEMANDED ON ANY COUNTS SO TRIABLE.

Respectfully submitted,

/s/ *Charles C. Weller*
Charles C. Weller
Attorney for Plaintiff

CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

May 15, 2024